IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POOH-BAH ENTERPRISES, INC., an Illinois corporation; ACE ENT. COMPANY, INC., an Illinois corporation; PERRY MANDERA, President of Pooh-Bah Enterprises, Inc. and Ace Ent. Company, Inc.; LISA D. SIMS, CHRISTEN E. HADSALL, and SUSAN L. LJENQUIST, entertainers and dancers; and PETER ABRUZZO, <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF CHICAGO, an Illinois corporation; RICHARD M. DALEY, in his official capacity as Mayor of the City of Chicago; and WINSTON MARDIS, in his official capacity as Director of the Mayor's License Commission; LICENSE APPEAL COMMISSION; WILLIAM D. O'DONAGHUE, Chairman; ALBERT D. McCOY and IRVING J. KOPPEL, Commissioners, <br><br>Defendants. | No. 96 C 4642 <br><br>Judge John A. Nordberg |

## ORDER

This is the second time the City of Chicago and related defendants (collectively, the "City") have attempted to remove this action from Illinois state court. *Pooh Bah Enterprises, Inc. v. City of Chicago*, No. 93 CH 4559, Circuit Court of Cook County. For the second time, plaintiffs request this court to remand eight state law counts back to Illinois state court pursuant to 28 U.S.C. § 1441(c).

Previously, the City filed its first notice of removal after plaintiffs filed a third-amended complaint in state court, which added two new counts arising under federal law. The other eight counts in the third-amended complaint arose under state law and included claims for administrative review arising out of the City's revocation of a liquor license. On April 29, 1997, by agreement of the parties, this court remanded the eight state law counts but stayed the two federal law counts pending a review by the Supreme Court of a Seventh Circuit ruling which would have prevented this court from exercising jurisdiction over any of the claims. Instead of waiting for the Supreme Court to rule, the City and plaintiffs agreed to a remand of only the eight state law claims -- in effect, splitting the case into a state action and a federal action. The City agreed to this split based on its stated desire to move forward on the state law claims, which the City asserted were the main thrust of plaintiffs' case and which the City claimed could be resolved by the state court in such a way as to moot the two federal claims. Based on these reasons and by consent of both parties, this court remanded the eight state law claims. As set forth below, the City has not presented this court with any valid reason to undo this agreement or to reconsider this court's prior remand decision. As a result, this court grants plaintiffs' motion to remand the eight state law claims (Counts I-VII and X) to the Circuit Court of Cook County.

## DISCUSSION

Plaintiffs in this action are various entities and individuals associated with an establishment featuring erotic female dancers. The City issued various business and liquor licenses to plaintiff Pooh Bah Enterprises, Inc. ("Pooh Bah"), which owned the establishment in question.

On March 22, 1993, the City served Pooh Bah with a notice of hearing, charging Pooh Bah with violations of § 4-60-140(d) of the Chicago Municipal Code based on the fact that Pooh Bah allegedly permitted female dancers to expose their buttocks and breasts in a way that violated the City code barring certain public displays of nudity in establishments licensed to sell liquor.[1] The City thus sought to revoke the various licenses previously issued to Pooh Bah.

On May 18, 1993, certain of the plaintiffs herein (Pooh Bah, several dancers, and a patron of the establishment) filed a four-count complaint in the Circuit Court of Cook County of the State of Illinois. The complaint asserted claims under state law challenging the revocation of the licenses and did not contain any claims arising under the United States Constitution.

On July 10, 1996, plaintiffs in this action (which consisted of the plaintiffs to the first complaint plus additional related business entities) filed a ten-count Third Amended Complaint (the "Complaint"). The Complaint contained similar state law claims as in the prior complaints but also added for the first time two federal law claims arising under the United States Constitution.

On July 29, 1996, the City filed its first notice of removal. On September 9, 1996, plaintiffs filed a motion to remand the action. Plaintiffs argued that the state law claims overwhelmingly predominated and that the resolution of those claims could moot the two federal constitutional claims. As an alternative, plaintiffs proposed that this court remand the eight state

---

[1] Specifically, Section 4-60-140(d) states that no licensed facility shall permit any person from exposing to public view "his or her genitals" or "any portion of the female breast at or below the areola." *Id.* The section further states that any such item "shall be considered exposed to public view if it is uncovered or is less than completely and opaquely covered." *Id.* Plaintiffs allege that the dancers did not violate this section because they performed wearing a thong or bikini bottom and an opaque latex top. (3dAm.Cmplt. ¶ 15.)

law claims (Counts I-VII, and X) and stay proceedings on the two federal claims (Counts VIII and IX) pending disposition of the state claims in the Illinois court. Specifically, plaintiffs argued for abstention under both the *Pullman* doctrine and the *Colorado River* doctrine and also argued that this court should decline to exercise supplemental jurisdiction over the eight state law claims because they presented novel and complex issues of state law which would be resolved best by a state tribunal. 28 U.S.C. § 1367.

On August 1, 1996, the Seventh Circuit issued its opinion in a separate case involving the City. In *International College of Surgeons v. City of Chicago*, 91 F.3d 981 (7th Cir. 1996), the Seventh Circuit held that a request for administrative review under the Illinois Administrative Review Law is not a "civil action . . . of which the district courts . . . have original jurisdiction within the meaning of 28 U.S.C. § 1441(a)." *Id.* at 992. As a result, "[r]emoval of the complaint is barred, and the [plaintiff's] claims <u>must be</u> remanded to the Circuit Court of Cook County for determination." *Id.* at 994 (emphasis added).

On October 30, 1996, the City filed their response brief and argued that this court should stay its ruling on plaintiffs' remand motion because the City, who was a party in the *ICS* case, had filed a request for rehearing *en banc* in that case. Of course, the City realized that if *ICS* stood it would mandate that this court remand all claims -- state and federal -- back to state court because they were both part of the same "civil action" over which this court did not have jurisdiction. Because the City believed that the Seventh Circuit's ruling was incorrect, the City requested that this court defer ruling on plaintiffs' remand motion.

On November 4, 1996, the Seventh Circuit denied the City's request for rehearing and suggestion for rehearing *en banc* in *ICS*.

-4-

On November 6, 1996, plaintiffs filed their reply brief and indicated that they had no objection to litigating the two federal constitutional claims in federal court if the state law claims were remanded to state court. Plaintiffs further stated in their reply brief that they would agree to such a "state/federal bifurcation" so long as this court had jurisdiction of the federal claims under *ICS* "as it finally comes down" (*i.e.* after rehearing *en banc* by the Seventh Circuit or after certiorari review by the Supreme Court).

On November 21, 1996, the City filed a supplemental response brief and informed this court that the Seventh Circuit had denied the City's request for rehearing *en banc* in *ICS*. The City stated that it had filed a motion to stay the issuance of the mandate in *ICS* and that it intended to file a petition for writ of certiorari in the United States Supreme Court on or before December 5, 1996. The City then asked this court to defer ruling on plaintiffs' motion to remand pending a decision on the City's petition for certiorari in *ICS*.

On April 14, 1997, the U.S. Supreme Court granted the City's petition for certiorari in *ICS*.

On April 29, 1997, this court held a hearing on plaintiffs' motion to remand. Although plaintiffs' attorneys did not appear at the hearing, two attorneys appeared on behalf of the City. This court and the City's attorneys discussed how to proceed in light of the Supreme Court's decision to grant certiorari in *ICS*. It appeared fairly clear under *ICS*, as it currently stood, that this court would have had no discretion and would have been required to remand this entire action back to state court. However, given that the Supreme Court had granted certiorari in *ICS*, there was a possibility that the Seventh Circuit's decision would be reversed. Of course, there also was

a possibility it would be affirmed or that the Supreme Court would set forth some new test or guideline.

This court expressed concern about the possible delay in waiting for the Supreme Court to decide the *ICS* case. In response to this concern, one of the City's attorneys then volunteered a "solution" that the City wanted to "offer" the court. (4/29/97 Transcript ("Tr.") at 3.) The attorney noted that plaintiffs had stated in their briefs that they had no objection to litigating the federal claims in federal court (assuming that this court ultimately would have jurisdiction after the Supreme Court issued its ruling) if the state law claims were remanded to state court. The City's attorney then suggested that the court follow this approach, stating that "the City has no objection." *Id.* at 4; *see also* at 6 ("we have no problem with this Court remanding the state law claims"). The City's attorney also added that if the Supreme Court upheld the Seventh Circuit in *ICS*, then the two remaining federal claims could be remanded to state court at that time.

In response to this proposal, this court expressed some concern whether it made sense to separate out the state and federal claims rather than litigating them together in one forum. Once again, the City's attorney responded to this court's concern, stating that the two federal claims "could possibly be mooted out after the state court has run its course." *Id.* at 6; *see also* at 5 ("I think resolution of those state court claims . . . would . . . give the City what it wants to do, and that is enforcing [an] ordinance"). In addition, the City's attorney expressed a concern that the Supreme Court might take a long time to rule and asserted that the City wanted to expedite matters: "realizing how long a period of time this is going to take to be resolved in the Supreme Court, <u>we do want to move forward</u> on the administrative review claim and any other state claims." *Id.* at 6-7 (emphasis added). Finally, the other of the City's two attorneys at the hearing

stated that the City wanted the state law claims to go forward in state court because those claims were the "bulk of the case." *Id.* at 7.

Based on these arguments and based on the lack of any objection by the City, this court granted plaintiffs' motion to remand the state law claims and denied without prejudice the motion to remand the federal law claims with leave to renew that motion, if warranted, after the Supreme Court's decision in *ICS*. This court memorialized this agreement and ruling in the following minute order, also dated April 29, 1997:

> Status hearing held; continued to 10/01/97 at 2:30 p.m. By agreement of the parties, plaintiff's motion to remand this action is granted as to the state law counts and denied without prejudice as to federal law counts for the reasons stated on the record.

(4/29/97 Min. Ord.)

On December 15, 1997, the Supreme Court issued its opinion in *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997). The Court reversed the Seventh Circuit, holding that an action containing both a federal claim and a state claim for on-the-record administrative review may be removed to federal court. In short, the Supreme Court's ruling now makes clear that this court does have the power to exercise jurisdiction over this state court action containing claims for administrative review.[2]

---

[2] Of course, the Supreme Court also indicated that, even if a district court had jurisdiction of the action, it could decline to review certain claims. In particular, under 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction over the state law claims. *Id.* at 533-34. "In addition to their discretion under § 1367(c), district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by [the Supreme Court] applies." *Id.* at 534. In short, according to the Supreme Court, "there may be situations in which a district court should abstain from reviewing local administrative determinations even if the jurisdictional prerequisites are otherwise satisfied." *Id.*

Based on the Supreme Court's ruling in *ICS*, on January 9, 1998, the City filed its second notice of removal seeking to remove the eight state law counts. On January 29, 1998, plaintiffs filed a second motion to remand these state law counts. Plaintiffs apparently do not seek to remand the federal law counts. In their current briefings on this second remand motion, the parties have revisited many of the arguments previously made in their briefs on the first motion to remand. These arguments include whether *Colorado River* or *Pullman* abstention is appropriate and whether this court should exercise or decline supplemental jurisdiction over the state law counts.

This court will not revisit these various arguments because it believes that the City waived any right to re-argue these issues when it agreed to a remand of the state law claims the first time around. That agreement was made in open court and was made based on the City's stated desire to move forward quickly on the state law claims. The City also stated that it believed that resolution of those claims could moot the federal claims and that those claims were the bulk of plaintiffs' case. The City has not provided this court with any reason for why these earlier arguments are no longer valid. Pursuant to this court's April 29, 1997 order, the Supreme Court's decision in *ICS* only could affect this court's disposition of the federal claims and not the state law claims. In sum, this court therefore grants plaintiffs' second remand motion based on the simple reason that there are no new grounds for reconsidering this court's prior order of April 29, 1997. This ruling makes some sense as a matter of comity. The City's original attempt to remove the entire action (federal claims plus supplemental state law claims) was based on the underlying policy of having a federal court oversee the litigation of federal claims. As a result of the parties'

prior agreement, the parties now will litigate state claims in state court and federal claims in federal court.

Finally, because the state court action has moved forward and because the parties previously expressed their belief that resolution of those claims may moot any federal claims, this court will stay ruling on the two pending federal claims until the state court action has been resolved. This court believes that the decision to stay the federal claims also was a part of this court's earlier ruling.

## CONCLUSION

For the reasons set forth above, this court grants plaintiffs' motion to remand Counts I-VII and X to the Circuit Court of Cook County, Illinois. The two federal counts remaining in this court will be stayed pending the outcome of the state court litigation.

ENTER:

JOHN A. NORDBERG
United States District Court Judge

DATED: March 22, 1999